# Disclosure of Court-Authorized Interceptions of Wire Communications to Congressional Committees

An officer of the Department of Justice may disclose tapes of court-authorized intercep- tions of wire communications to congressional committees without a court order, as long as such disclosure is appropriate to the proper performance of his official duties.

Generally, providing Congress with information in order to help facilitate its constitution- ally mandated legislative role is part of the legal obligation of the Executive Branch; however, it is also the Executive's responsibility to determine when such disclosure would impede its performance of other responsibilities, and thus be inappropriate.

May 12, 1980

## MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL, CRIMINAL DIVISION

I am responding to your memorandum concerning the dissemination to the Permanent Subcommittee on Investigations of the Senate Com- mittee on Governmental Affairs of tapes of court-authorized intercep- tions of wire communications. In a January 9, 1980, letter to Deputy Assistant Attorney General Irvin B. Nathan, the subcommittee's chief counsel, Marty Steinberg, requested such tapes dealing with "organized crime, labor racketeering, and narcotics trafficking." We conclude, as explained below, that this Department is empowered under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended, 18 U.S.C. § 2510 *et seq.*, to disclose tapes of court-authorized intercep- tions of wire communications in response to a proper request or demand by a congressional committee unless, in the Department's judg- ment, such disclosure would be improper because of our duty faithfully to execute the criminal laws.

Ordinarily, this Department is empowered to respond to proper re- quests for information from congressional committees, unless such in- formation is privileged or protected by a statutory restriction upon executive agency disclosure. The only applicable statutory restriction of which we are aware in this instance is 18 U.S.C. § 2515, which pro- vides:

> *Whenever any wire or oral communication has been inter- cepted, no part of the contents of such communication* and no evidence derived therefrom *may be received in evidence in any* trial, hearing, or other *proceeding in or before any*

627

court, grand jury, department, officer, agency, regulatory body, *legislative committee,* or other authority of the United States, a State, or a political subdivision thereof *if the disclosure of that information would be in violation of this chapter [i.e.,* Title III]. [Emphasis added.]

Section 2515 is not an absolute, but a conditional limitation on disclosure. If disclosure is otherwise authorized by Title III, it is not prohibited by § 2515.

The authority to disclose intercepted wire communications appears in 18 U.S.C. § 2517. Subsection (2) of that section provides:

Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire or oral communication or evidence derived therefrom may use such contents to the extent such use is appropriate to the proper performance of his official duties.

Because the proper performance of the official duties of Department personnel includes responding to proper requests and demands of congressional committees, the plain language of this subsection would appear to authorize the disclosure in question.

Your Division suggests that § 2517(2) might not authorize disclosures to congressional committees, but might be limited to disclosures in connection with "actual criminal investigations and prosecutions." Although the language of the Senate report explaining § 2517(2) illustrates its coverage only with examples that would be so limited, S. Rep. No. 1097, 90th Cong., 2d Sess. 99–100 (1968), we do not believe such a limitation should be inferred from the statute.

As originally drafted by Professor G. Robert Blakey, the section that was to become § 2517 included language substantially similar to the section eventually enacted, but included also the following section:

(d) The contents of any wire or oral communication or evidence derived therefrom intercepted in conformity with this Chapter may otherwise be disclosed only upon a showing of good cause before a judge of competent jurisdiction.

Blakey, G. R., "Aspects of the Evidence Gathering Process in Organized Crime Cases: A Preliminary Analysis," *reprinted in* President's Commission on Law Enforcement and Administration of Justice, *Task Force Report: Organized Crime Annotations and Consultants' Papers* 109 (1967). It is certain from Professor Blakey's discussion that he viewed disclosures to legislative committees as included within his subsection (d), and thus contingent upon a judicial finding of good cause. *Id.* at 103–04.

628

Subsection (d), however, was omitted from S. 675, 90th Cong., 1st Sess. (1967), which became Title III of the bill eventually enacted as the Omnibus Crime Control and Safe Streets Act of 1968. We have found no discussion of this omission in the legislative history of S. 675 or Title III, but its impact would logically have to lead to one of the following interpretations. Either Congress, like Professor Blakey, intended subsections (1)–(3) to confer disclosure authority only with respect to specific criminal proceedings and to eliminate any disclosure authority outside that context, or Congress intended to permit disclosures to Congress to be made without a court order under subsection (2), so long as the disclosures would be within the proper performance of an investigative or law enforcement officer's legal duties.

For three reasons, we conclude that the latter interpretation is more reasonable. First, the legislative history contains no suggestion that Congress intended to protect intercepted communications from proper disclosures to congressional committees. Second, Congress ordinarily does not protect Executive Branch information in this way, *cf.*, 5 U.S.C. § 552a(b)(9). Third, providing Congress with information in appropriate instances in order to help facilitate its constitutionally mandated legislative role is part of the legal obligation of the Executive Branch to help achieve a mutual accommodation of the two branches' functional needs for information. *U.S.* v. *American Telephone and Telegraph Co.*, 567 F. 2d 121 (D.C. Cir. 1977). We should not lightly assume that Congress has proscribed our participation in what otherwise would be a constitutionally mandated effort at cooperation.[1]

It should be noted that, although § 2517(2) authorizes the use of the contents of intercepted communications "to the extent such use is appropriate to the proper performance of [the] official duties" of an investigative or law enforcement officer, this section does not require automatic compliance with the requests of legislative committees and, on its face, mandates a finding by a disclosing officer that the requested disclosure would be "appropriate to the proper performance of . . . official duties." There are foreseeable circumstances in which the disclosure to congressional committees of the contents of intercepted communications would impede Departmental performance of other official duties, *e.g.*, by compromising ongoing investigations or divulging the identities of informants. Because the faithful execution of

---

[1] The Criminal Division also suggests that the scope of "official duties" as that phrase is used in § 2517(2) perhaps should be read as comprising only duties in connection with criminal actions because Congress, when it subsequently wished to accommodate the disclosure of wiretap information in civil actions, amended § 2517(3), rather than regarding such disclosures as within the proper performance of a law enforcement officer's official duties. Subsection (3) as first enacted in 1968, however, expressly pertained to testimony in criminal actions and, absent the later amendment, the omission in that subsection of any reference to civil actions might have precluded an assumption that such actions were covered by § 2517(2). The original limitation of § 2517(3) to criminal actions, however, would not have precluded an interpretation of § 2517(2) comprising nonadjudicatory proceedings. *e.g.*, congressional hearings. On the different uses of information in legislative and adjudicatory contexts, *see, Senate Select Committee on Presidential Campaign Activities* v. *Nixon*, 498 F.2d 725, 732 (D.C. Cir. 1974).

the criminal laws and the protection of the constitutional rights of potential defendants requires this Department to avoid disruptions in the orderly handling of cases, we conclude that the Department might reasonably determine that disclosures to Congress, in certain cases, would not be "appropriate to the proper performance of . . . official duties." In sum, the proper exercise of authority under this section requires a balancing of responsibilities, and the Department may, as appropriate, comply with or decline committee requests for the contents of intercepted communications.

LARRY A. HAMMOND
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
